KNOUSE FOODS COOPERATIVE, INC.

v.

BURNS INTERNATIONAL SECURITY SERVICES, INC.

Civ. A. No. CA79–1570.

United States District Court, E. D. Pennsylvania.

Aug. 10, 1981.

---

Richard W. Hopkins, White & Williams, Philadelphia, Pa., for plaintiff.

William T. Campbell, Jr., Swartz, Campbell & Detweiler, Philadelphia, Pa., for defendant.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Pending before this court is plaintiff Knouse Foods' motion for partial summary judgment pursuant to Fed.R.Civ.P. 56. The motion raises two primary issues in this diversity action: (1) whether under the law of Pennsylvania a security company, licensed under the Private Detective Act of 1953, as amended, can assert as a defense to liability that its employee acted outside the scope of his employment when the Act expressly charges the licensee with legal responsibility for the "good conduct" of its employees and (2) whether a contractual provision in the contract between plaintiff and defendant which limits defendant's liability for the intentional acts of its employees to a maximum of $50,000 per occurrence is void as against public policy. Having considered carefully this motion as well as defendant's opposition thereto, I will deny the motion.

The undisputed facts are as follows: Defendant Burns is licensed under the Private Detective Act of 1953, as amended, to do business as a security agency. Pursuant to negotiations, Burns entered into an agreement with Knouse Foods to provide security services to Knouse. During the term of the agreement a fire occurred at Knouse's warehouse which caused damage to the building. At the time of the fire a Burns employee, Donald Ray Spoonhour, was on duty at the warehouse. Subsequently, Spoonhour pleaded *nolo contendere* to a charge of arson of Knouse's warehouse.

The contract for security services between Knouse and Burns contains a "limits of liability" provision relating to Burns' liability to Knouse which reads in pertinent part:

Client [Knouse] acknowledges that Burns is not an insurer. The amounts payable to Burns under this Agreement are based upon the value of the services rendered and are unrelated to the value of Client's premises. The services provided under this Agreement are solely for the benefit of the Client and neither this Agreement nor any services rendered hereunder shall give rise to, or shall be deemed to or construed so as to confer any rights on any other party as a third party beneficiary or otherwise and Client agrees to indemnify Burns against any claims by such third parties. Burns shall be liable only for personal injury or property damage resulting directly from the negligent performance of the services rendered under this Agreement. . . .

Burns shall not be liable for failure to perform this Agreement due to any cause beyond Burns control nor for any consequential or special damages. Anything herein to the contrary notwithstanding, Burns liability for the intentional acts of its employees or agents shall be limited to a maximum of $50,000 per occurrence.

On May 2, 1979 Knouse filed suit in this court seeking damages in excess of $10,000 from Burns resulting from property damage to the warehouse caused by the fire. Knouse's complaint charged that Burns negligently supervised its employee, Spoonhour, who, while acting within the scope of his employment, caused the fire which damaged plaintiff's warehouse. In answer to the complaint Burns asserted, *inter alia*, the following two defenses which plaintiff seeks to have stricken through its motion for partial summary judgment.

### THIRD DEFENSE

If it is determined that the fire in question resulted from an intentional act of an employee of defendant, defendant's liability is limited to a maximum of $50,000 as stated in the Limits of Liability [provision] of the Agreement. . . .

### FOURTH DEFENSE

If it is determined that Donald Ray Spoonhour set fire to any property of the plaintiff, he was acting outside the course and scope of his employment for the defendant and defendant is not responsible for such an act.

Plaintiff contends that these defenses should be stricken because the Private Detective Act of 1953, as amended, under which Burns is licensed to do business as a security agency, prohibits these defenses. Plaintiff argues that the Act requires a security company to be responsible for its employee's good conduct. Secondly, plaintiff argues that the last sentence of the limits of liability provision in the contract is void as against public policy.

■ Plaintiff argues that the defendant's fourth defense, *supra*, must be stricken because the assertion that Spoonhour acted outside the scope of his employment contravenes as a matter of law the public policy of the legislature which plaintiff claims is expressed in the language of section 23 of the Private Detective Act of 1953, as amended. Section 23, 22 P.S. § 23(a), reads in pertinent part:

> The holder of any license certificate issued pursuant to this act may employ to assist him in his work of private detective or investigator . . . and in the conduct of such business as many persons as he may deem necessary, and shall at all times during such employment be legally responsible for the good conduct in the business of each and every person so employed.

Plaintiff argues that the "good conduct" clause of this provision precludes defendant from disclaiming responsibility even for acts outside the scope of employment. Neither party has presented a decision of a Pennsylvania court relating to this issue and I have found none. The "good conduct" language of the provision is limited by the phrase "in the business" which follows it. The statute imposes responsibility upon a licensee for his employee's "good conduct" only while the employee is acting in furtherance of his employer's security business. This construction is consistent with the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.*, particularly 1 Pa.C.S.A. § 1921(b) which states: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

■ Plaintiff next argues that the portion of the contract between the parties which limits the amount to $50,000 that Knouse can recover for damage to Knouse's property caused by the intentional acts of Burns' employees is an exculpatory clause which is void because it is against public policy.

> The provision reads in pertinent part: Anything herein to the contrary notwithstanding Burns liability for the intentional acts of its employees or agents shall be limited to a maximum of $50,000 per occurrence.

Whether labeled "exculpatory" as urged by plaintiff or a "limit of liability" clause as urged by defendant, it cannot be said to be void as against public policy. In *Boyd v. Smith*, 372 Pa. 306, 94 A.2d 44 (1953), the Pennsylvania Supreme Court held that an exculpatory clause in a lease which attempted to relieve the lessor from liability to third parties for all injury or damage caused by his failure to comply with certain housing code regulations which required him to install fire escapes on his building was void. However, the Court stated:

> Such a protective clause is undoubtedly valid and enforcible if it does not contravene any policy of the law, that is if it is not a matter of interest to the public or the State but merely an agreement between persons relating entirely to their private affairs. *Id.* at 372 Pa. at 309–10, 94 A.2d at 46.

Section 24 of the Private Detective Act does not expressly preclude private parties from allocating this risk of loss between themselves. The provision at issue here does not diminish any of the protection afforded by the statute. I note that Knouse has not directed my attention to any statute which prohibits a security firm and its clients from allocating the risk of loss to the client's property as the parties have done here. Plaintiff has failed to demonstrate that as a matter of law the provision is void and accordingly is not entitled to summary judgment. I deny the motion for partial summary judgment.