[No. E023754. Fourth Dist., Div. Two. Sept. 28, 1999.]

BORG-WARNER PROTECTIVE SERVICES CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
SYROCO, INC., Real Party in Interest.

**COUNSEL**

Manning, Marder & Wolfe, David J. Wilson and Barry A. Bradley for Petitioner.

No appearance for Respondent.

Kermit J. Morgan for Real Party in Interest.

**OPINION**

**RICHLI, J.**—We hold that a security guard company is not liable for the arson committed by one of its employees who was acting outside the course and scope of his employment. In so holding we determine that Business and Professions Code section 7582.15[1] does not abolish the common law doctrine of respondeat superior in requiring that an employee be acting in the scope of employment in order to hold an employer liable for the employee's acts.

We conclude, therefore, that the trial court erred in denying summary adjudication of a cause of action which seeks to hold a security guard

---

[1]All further references are to the Business and Professions Code unless otherwise stated.

company vicariously liable based on section 7582.15. Accordingly, we will grant the petition for writ of mandate.

## Factual and Procedural Background

The employer in this case is petitioner Borg-Warner Protective Services Corporation doing business as Wells Fargo Guard Services (hereafter Wells Fargo). It contracted with Syroco, Inc. (hereafter Syroco) to provide security guards at the latter's Corona plant where Syroco manufactures plastic chairs. On March 9, 1996, a fire occurred at that plant. William Yrigoyen, one of the security guards on duty at the time, pleaded guilty to arson in connection with the fire.[2]

Syroco has sued Wells Fargo for damages arising from this fire as well as two other incidents. The third, fourth, fifth, and eighth causes of action are based on the March 9, 1996, fire. In the third cause of action, Syroco charges Wells Fargo with negligence in hiring, retaining, and furnishing Yrigoyen. The fourth cause of action alleges Yrigoyen intentionally set the fire and that he was acting within the course and scope of his employment. The fifth cause of action is for breach of contract. The eighth cause of action asserts that Wells Fargo is strictly liable to Syroco under section 7582.15.

Wells Fargo moved for summary adjudication of these causes of action on the ground that Syroco could not recover because, as a matter of law, Yrigoyen was acting outside the course and scope of his employment when he committed the arson. The trial court granted summary adjudication with respect to the third, fourth, and fifth causes of action, but denied it as to the eighth, concluding "that Wells Fargo may be held liable for its employee's 'bad conduct' as opposed to 'good conduct' committed while he was actually on the job, even though that conduct fell outside the scope of the employee's job duties."

Both parties sought review of the ruling by filing petitions for writ of mandate. We granted Syroco's petition, concluding that the trial court had erred in granting summary judgment on the third cause of action predicated on a theory that Wells Fargo had acted negligently. We denied Wells Fargo's petition, concluding that writ review of the issue was not necessary because of the other cause of action pending against it. The Supreme Court determined otherwise, granting Wells Fargo's petition for review and transferring

---

[2]Prior to March 1996, Wells Fargo provided only one guard at Syroco's plant. Yrigoyen had been assigned to the plant at some time prior to November 1995, but was removed at Syroco's request. Later, it was determined that two guards should be assigned, and Wells Fargo reassigned Yrigoyen. On his first day back, he set the fire.

the matter to us with directions to issue an order to show cause why the relief sought should not be granted. The Supreme Court's action constitutes a determination that Wells Fargo has no other adequate remedy. (*Mallett* v. *Superior Court* (1992) 6 Cal.App.4th 1853, 1863 [8 Cal.Rptr.2d 829].)

## DISCUSSION

■ Under the common law doctrine of respondeat superior, an employer may be held vicariously liable for torts committed by an employee within the scope of employment. (*Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 208 [285 Cal.Rptr. 99, 814 P.2d 1341].) This common law rule has been codified as Civil Code section 2338.[3] (*Doe* v. *Capital Cities* (1996) 50 Cal.App.4th 1038, 1047 [58 Cal.Rptr.2d 122].) ■ Syroco contends section 7582.15 expands the liability of security guard companies to cover acts committed by the employee for which the employer could not be held liable under the traditional principles of respondeat superior. Section 7582.15 was enacted in 1994 as part of the Private Security Services Act, section 7580 et seq. It provides as follows: "A licensee shall at all times be legally responsible for the good conduct in the business of each of his or her employees or agents, including his or her manager." (§ 7582.15.)

Syroco maintains that this statute is very clear and makes a security guard company strictly liable for the acts of its employees by abolishing the course and scope of employment requirement which is otherwise necessary to impose respondeat superior liability. Wells Fargo contends to the contrary that the plain meaning of the statute is that the phrase "good conduct" is limited by the "in the business" phrase that follows it, and that the statute effects no change in the common law. We agree with Wells Fargo's interpretation.

■ Our role in construing a statute is "to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Goodman* v. *Zimmerman* (1994) 25 Cal.App.4th 1667, 1676 [32 Cal.Rptr.2d 419].) ■ Here, the phrase "good conduct in the business" is ambiguous in conveying the Legislature's intent whether to confirm or to abrogate the common law rule of scope of employment with respect to a security guard company's vicarious liability. In light of this ambiguity, we apply the well-established rule in California that statutes are not presumed to alter the

---

[3]Civil Code section 2338 states: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal."

common law unless expressly stated. (*Saala* v. *McFarland* (1965) 63 Cal.2d 124 [45 Cal.Rptr. 144, 403 P.2d 400].) ■ "There is a presumption that a statute does not, by implication, repeal the common law." (*People* v. *Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509].) "Unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed so as to avoid conflict with common law rules." (*Ibid.*) Accordingly, a statute will be construed in light of common law principles unless it contains clear and unequivocal language that discloses an intent to depart from, alter, or abrogate the common law rule concerning a particular subject matter. (*Ibid.*)

■ Thus, we must presume that the Legislature intended no change in the common law in the absence of any indication to the contrary. Indeed, the Legislature has indicated that it intended no change in law when it enacted the Private Security Services Act. "It is the intent of the Legislature in repealing the Private Investigator Act, and moving all existing provisions into either the new Private Investigator Act, relating to private investigators, or the Security Services Act, relating to security services, that the new laws be construed as a continuation of the prior laws, and not to make any substantial change in the law." (Stats. 1994, ch. 1285, § 9.)

Although there are no California cases interpreting this statute, other courts have had to construe similar statutes from other states, resulting in conflicting authority. In *Knouse Foods Co-op., Inc.* v. *Burns Intern. Sec.* (E.D.Pa. 1981) 519 F.Supp. 867, the plaintiff sued for damages arising out of an arson committed by an employee of the security guard company it had hired. As one defense the security guard company contended that it could not be held liable because its employee was not acting within the course and scope of his employment. The plaintiff countered that this defense was barred by section 23 of Pennsylvania's Private Detectives Act of 1953 that provided in pertinent part: "The holder of any license certificate issued pursuant to this act may employ to assist him in his work of private detective or investigator . . . and in the conduct of such business as many persons as he may deem necessary, and shall at all times during such employment be *legally responsible for the good conduct in the business* of each and every person so employed." (22 Pa. Cons. Stat. § 23(a), italics added.)

The federal district court made short shrift of plaintiff's contention that the "good conduct" clause of the provision precluded the security company from disclaiming responsibility even for acts outside the scope of employment. "Neither party has presented a decision of a Pennsylvania court relating to this issue and I have found none. The 'good conduct' language of

the provision is limited by the phrase 'in the business' which follows it. The statute imposes responsibility upon a licensee for his employee's 'good conduct' only while the employee is acting in furtherance of his employer's security business. This construction is consistent with the Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1501 *et seq.*, particularly 1 Pa.C.S.A. § 1921(b) which states: 'When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' " (*Knouse Foods Co-op., Inc.* v. *Burns Intern. Sec., supra,* 519 F.Supp. at p. 869; see also *Watson* v. *Aquinas College* (1978) 83 Mich.App. 192 [68 N.W.2d 342, 344] [Michigan statute providing that a licensee *may* be accountable for the good conduct in the business of an employee did not change common law rule.].)

A contrary result was reached in *Stewart Warner Corp.* v. *Burns Internat'l Sec. Serv., Inc.* (N.D.Ill. 1973) 353 F.Supp. 1387, which coincidentally also involved a claim for damages resulting from a fire set by a security guard. One theory of recovery was for statutory liability under a similarly worded Illinois statute: "The holder of a certificate of authority who employs persons to assist him in the work of private detective and in the conduct of such business shall at all times during such employment be legally responsible for the good conduct in the business of each and every person so employed." (Former Ill. Rev. Stat., ch. 38, § 201-10b(10).) The plaintiff in that case, as Syroco does here, took the position that under this statute liability extended to all wrongful acts of employees of detective agencies, regardless of whether they were negligently hired and whether the acts are negligent or intentional, so long as they were committed while the employee was actually on the job. The federal district court agreed. "The construction urged by defendant would interpret 10b(10) as simply reiterating the common law, thus attributing to the legislature an idle act in adopting 10b(10). In *Apex Smelting Co.* v. *Burns,* 175 F.2d 978, 981 (7th Cir. 1949), a case involving facts very similar to those here, the court upheld a directed verdict for defendant where (1) there had been no showing of negligent hiring, and (2) *respondeat superior* was inapplicable because the employee's act was intentional and therefore beyond the scope of his employment. Section 201-10b was subsequently enacted. [¶] The construction of 10b(10) contended for by plaintiff and adopted by this Court accords the statute a meaning which is consistent with its apparent purpose to remove from users of agency services the burden of loss from intentional injury inflicted by detective agency employees—which was the effect of *Apex*—and place it upon the agencies as a cost of doing business. Users are in no position to screen security employees; the agencies are. And 10b(10), as here interpreted, provides a substantial incentive for the agencies to do so with the

utmost care." (353 F.Supp. at p. 1390; see also *Simmons, Inc.* v. *Pinkerton's, Inc.* (7th Cir. 1985) 762 F.2d 591, 596.)

The trial court in our case was persuaded by *Stewart Warner*'s analysis that the statute must be a reflection of a legislative intent to change the common law rule because otherwise the Legislature would be engaging in an idle act. Although this rationale has some appeal, we do not find it decisive for a number of reasons. As discussed above, we cannot presume that our Legislature intended to change the common law because it did not expressly state such an intention. In contrast we note that the Illinois statute in question in *Stewart Warner* was enacted subsequent to, and apparently in response to, a decision which upheld a directed verdict for an employer defendant where there was no showing of negligent hiring and where respondeat superior was inapplicable because the employee's act fell beyond the scope of his employment.

Moreover, codification of common law rules is a regular and accepted practice in this state. This practice began in 1850 when the state incorporated the common law of England and continued when the Legislature of 1872, following New York's 1865 codification, recognized the applicability of common law rules which it incorporated in provisions of the Civil Code, Code of Civil Procedure, Penal Code, and Political Code. (*Warsaw* v. *Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 577, fn. 1 [199 Cal.Rptr. 773, 676 P.2d 584].) For example, the Civil Code attempted to codify the common law of master-servant relations. (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 670, fn. 10 [254 Cal.Rptr. 211, 765 P.2d 373].) As already mentioned, Civil Code section 2338 is itself a codification of the common law rule of respondeat superior.[4] Thus, the Legislature did nothing remarkable when it incorporated the common law rule of respondeat superior in section 7582.15.

We conclude that rather than changing the common law rule of respondeat superior liability, section 7582.15 restates the rule of nondelegable duties of licensees with respect to security guard licensees. ▮ This rule provides that a licensee who elects to operate the business through employees, is responsible to the licensing authority for their conduct in the exercise of the license. (*California Assn. of Health Facilities* v. *Department of Health Services* (1997) 16 Cal.4th 284, 295 [65 Cal.Rptr.2d 872, 940 P.2d 323].) " 'By virtue of the ownership of a . . . license such owner has a responsibility to see to it that the license is not used in violation of the law.' " (*Ford Dealers*

---

[4]No attempt shall be made to list particular examples of common law rules that have been codified because such a list would necessarily be fragmentary.

*Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 360 [185 Cal.Rptr. 453, 650 P.2d 328].) This rule also derives from the common law and has been incorporated in various statutes as noted in *California Assn. of Health Facilities* v. *Department of Health Services.* " '[T]he objective of an administrative proceeding relating to a possible license suspension is to protect the public; to determine whether a licensee has exercised his privilege in derogation of the public interest . . . .' If a licensee were not liable for the actions of his independent contractor, 'effective regulation would be impossible. He could contract away the daily operations of his business to independent contractors and become immune to *disciplinary action by the licensing authority.*' The principle that a licensee will be held liable for the acts of its agents is one that has been applied whether the agent is an independent contractor or an employee." (*California Assn. of Health Facilities* v. *Department of Health Services, supra,* 16 Cal.4th at p. 296, italics added.)

The Supreme Court in *California Assn. of Health Facilities* v. *Department of Health Services, supra,* made it abundantly clear that, although the two rules are related and serve a common purpose, i.e. "the prevention of future harm to the public by giving the licensees strong incentives to ensure that their employees' conduct conforms to the law" (16 Cal.4th at p. 296), the rule of nondelegable duties for licensees is distinct from the employer's *tort* liability for its employees under the doctrine of respondeat superior. It referred to "licensee's liability for its employees in a regulatory enforcement proceeding as the principle of the licensee's 'nondelegable duty,' and . . . reserve[d] the term 'respondeat superior' to apply only to an employer's *tort* liability for its employees." (*Id.,* at p. 295, fn. 5.) It also rejected a suggestion that its decision in *Lisa M.* v. *Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291 [48 Cal.Rptr.2d 510, 907 P.2d 358], declining to hold a health care provider liable in tort for a sexual assault by an employee as being outside the scope of employment, had any application to the rule of nondelegable duties for licensees.

 We note that section 7582.15 is contained in the article of the Private Security Services Act dealing with regulation, licensing, and registration. Among other regulations, section 7582.26 provides that a licensee "shall not knowingly make any false report to a client," shall not wear a uniform that implies a connection to a government agency, and shall not wear a uniform except while on duty. (§ 7582.26, subds. (b) and (d), and (f).) Other statutes in this article require guards to display approved patches and wear only approved caps and insignias. (§§ 7582.27, 7582.28.) In the context of these regulatory statutes, section 7582.15 is properly viewed as a

codification of the common law rule that licensed employers such as Wells Fargo are responsible to the licensing authority for any violations of these statutes by their employees.

Wells Fargo contends that, if allowed to stand, the trial court's interpretation will force security guard companies in California to become the insurers of criminal acts for which they themselves cannot obtain insurance. It asserts that a property owner such as Syroco can routinely insure for loss due to fire, even arson, whereas, it cannot get a bond to insure it for the intentional acts of its employees. (Ins. Code, § 533.) Syroco disputes Wells Fargo's assertion about the unavailability of insurance, and contends that any losses resulting from the acts of its employees should be borne by Wells Fargo and not itself, an innocent customer. However, the Legislature has already made a general policy determination that an employer is not vicariously liable for the act of an employee outside the scope of employment, and, for the reasons we have discussed, we cannot find that it intended to change this rule with respect to employers of security guards.

### DISPOSITION

Let a peremptory writ of mandate issue directing the Superior Court of Riverside County to set aside its order denying Wells Fargo's motion for summary adjudication of the eighth cause of action and to enter a new order granting the motion with respect to this cause of action.

Hollenhorst, Acting P. J., and Gaut, J., concurred.