*Chesapeake Bay Foundation, Inc., et al. v. CREG Westport Developers I, LLC, et al.*, No. 53, September Term, 2021, Opinion by Booth, J.

**MARYLAND FOREST CONSERVATION ACT—FINAL DECISION FOR PURPOSES OF JUDICIAL REVIEW**

The Maryland Forest Conservation Act, Maryland Code (2018 Repl. Vol., 2021 Supp.), Natural Resources Article § 5-1601, *et seq*. (the "Act") establishes the requirements for the adoption and implementation of a forest conservation program by local governments having planning and zoning authority. Under the Act, as well as the regulations promulgated by the Department of Natural Resources, the local government must establish appeal procedures in connection with the approval of a forest conservation plan and associated variance or waiver granted by the local government from the strict application of the provisions of the local forest conservation program or the Act.

The Court of Appeals held that the approval of a forest conservation plan and associated waiver that permitted removal of 49 specimen trees from a site in connection with a development plan was a final decision of the Harford County Department of Planning and Zoning, and that the Chesapeake Bay Foundation and neighboring landowners had the right to file a petition for judicial review of that final decision to the Circuit Court for Harford County under the applicable provisions of the Harford County Code. The approval of a forest conservation plan is an administratively distinct agency action and is independent from Harford County's general development approval process for subdivision and site plan applications. Thus, it is a final decision of the administrative agency because it leaves nothing further for the agency to do.

Circuit Court for Harford County
Case No.: C-12-CV-20-000022
Argued: May 9, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 53

September Term, 2021

CHESAPEAKE BAY FOUNDATION, INC., et al.

v.

CREG WESTPORT I, LLC, et al.

Watts,
Hotten,
Booth,
Biran,
Raker, Irma S.
 (Senior Judge, Specially Assigned),
McDonald, Robert N.
 (Senior Judge, Specially Assigned),
Getty, Joseph M.
 (Senior Judge, Specially Assigned),

JJ.

Opinion by Booth, J.
Hotten, J., and Getty, C.J., dissent.

Filed: August 26, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

In Maryland, counties and municipalities with planning and zoning powers have the authority to approve development within their respective jurisdictions. These local jurisdictions have the right to regulate various aspects of development on property, including the size of buildings, the applicable setbacks from property lines, the types of uses that may be made in zoning districts, and the minimum lot size for individually developed parcels.

During the 1980s, a population increase in the State led to the conversion of large tracts of agricultural and forest land into residential subdivision and commercial areas. In response to the intense development pressure on the environment, the State adopted three laws to protect the State's natural resources: (1) the Chesapeake Bay Critical Area Law in 1984[1] to protect the Chesapeake Bay and its tributaries; (2) the Nontidal Wetlands Law in 1990[2] to protect the State's nontidal wetlands; and (3) the Maryland Forest Conservation Act in 1991[3] to stem the loss of forest in the State.

These laws work in concert to protect the environment and impose conditions and restrictions on the development and redevelopment of property in the State. The enactment

---

[1] *See* 1984 Md. Laws, Ch. 794. The Chesapeake and Atlantic Coastal Bays Critical Area Protection Program (the "Critical Area Law") is codified in the Maryland Code (2012 Repl. Vol, 2021 Supp.), Natural Resources Article ("NR") § 8-1801, *et seq.*

[2] *See* 1989 Md. Laws, Ch. 536. The Nontidal Wetlands Act is codified in the Maryland Code (2013 Repl. Vol., 2021 Supp.), Environment Article ("EN") § 5-901, *et seq.*

[3] *See* 1991 Md. Laws, Ch. 255. The Maryland Forest Conservation Act is codified in the Maryland Code (2018 Repl. Vol., 2021 Supp.), NR § 5-1601, *et seq.*

of each of these laws created more State oversight over development approvals by local jurisdictions exercising their independent planning and zoning authority where development has the potential to impact natural resources.[4]

The Forest Conservation Act of 1991 was enacted to protect the forests of Maryland by making the identification and protection of forests and other sensitive areas an integral part of the site planning process. It is administered by the Maryland Department of Natural Resources (sometimes referred to as "DNR") but implemented primarily by local jurisdictions having planning and zoning authority. The primary objective of the Forest Conservation Act is to minimize the loss of forest land in connection with development activity and ensure that priority areas for forest retention and forest planning are identified and protected prior to development.[5] The Forest Conservation Act established standards for local jurisdictions with planning and zoning authority to enforce during development. Identification and mapping of these priority areas occurs during the development review and approval of a forest stand delineation, which identifies the existing forest cover and

---

[4] The State oversight is undertaken by State agencies that are tasked with administering the State law, adopting regulations, and ensuring compliance by local governments that must apply the State laws in connection with undertaking development review at the local level. Specifically, the Critical Area Commission for the Chesapeake and Atlantic Coastal Bays ("Critical Area Commission") oversees the implementation of the Critical Area Law, *see* NR § 8-1806; the Maryland Department of the Environment ("MDE") oversees the statewide program for the conservation and protection of nontidal wetlands, *see* EN § 5-903; and the Maryland Department of Natural Resources ("DNR") is charged with overseeing the Maryland Forest Conservation Act, *see* NR § 5-1610.

[5] *See* "THE MARYLAND FOREST CONSERVATION ACT: A TEN YEAR REVIEW," Maryland Department of Natural Resources Forest Service, September 2004, https://perma.cc/BQS3-AGFU.

environmental features on a proposed development site. It is submitted at the initial stages of a subdivision or site plan approval, or before a sediment control application is submitted.[6] When a forest stand delineation is completed and approved, the information that it provides can then be used to prepare the forest conservation plan.[7]

A forest conservation plan indicates the limits of disturbance for the proposed project and how the existing forested and sensitive areas will be protected during and after development. A forest stand delineation and forest conservation plan must be prepared by a Maryland licensed forester, a Maryland licensed landscape architect, or other qualified professional.[8]

On a property with significant forest cover, a forest conservation plan, as well as any variance or waivers that are granted by the approving agency from the strict application of the provisions of the Forest Conservation Act or local forest conservation program, may dictate the scope, location, and placement of the building footprint and structures on the property.

In this case, we must determine whether the approval of a forest conservation plan, as well as an associated waiver that authorizes a developer to remove trees that would otherwise be protected under the Act, is a final agency decision that is subject to independent judicial review under the Harford County Forest Conservation Program.

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

For the reasons that follow, we hold that the Act, and regulations promulgated by DNR require a right to appeal the approval of a forest conservation plan. We also hold that a county agency's approval of a forest conservation plan is a "final decision" for appeal purposes.

# I

## Background and Procedural History

CREG Westport I, LLC[9] and Harford Investors, LLP (collectively, the "Developer") propose to develop a mixed-use commercial development containing retail venues, restaurants, a hotel, and warehouses, which total over one million square feet. The site, which is referred to as "Abingdon Business Park," is located along Interstate 95 in Harford County, Maryland and is zoned Commercial-Industrial. It consists of five parcels of land totaling approximately 326.47 acres. There are approximately 314.73 acres of forest located on the site, which include 85 specimen trees.[10] The site also contains: numerous streams; nontidal wetlands; and the HaHa Branch, a tributary of the Bush River which runs from north to south through the property and ultimately flows into the Chesapeake Bay.

---

[9] As of March 3, 2021, CREG Westport I, LLC's interest in this action was assigned to BTC III I-95 Logistics Center LLC pursuant to an Assignment of Purchase Contract and Infrastructure Agreement.

[10] "Specimen trees" refer to trees larger than 30 inches in diameter at breast height or 4.5 feet above the ground. *See* Md. Code, NR § 5-1607(c)(2)(iii) and Harford County Code § 267-39D(3).

## A. *Developer's Submission of the Forest Conservation Plan and Development Plans*

Under the Maryland Forest Conservation Act, Natural Resources Article ("NR") (2018 Repl. Vol., 2021 Supp.), § 5-1601, *et seq.* of the Maryland Code (sometimes referred to as the "Act") and the Harford County Code ("HCC") § 267-37, the Developer was required to submit a forest conservation plan outlining its plans to retain, protect, and reforest the site in connection with its proposed development.[11] The Developer first completed a forest stand delineation[12]—a requirement under the Act—which identified 85 specimen trees on the development site which would be subject to the forest conservation plan. In February 2019, the Developer submitted its initial application for a forest conservation plan to the Harford County Department of Planning and Zoning, in which the Developer proposed the clearing of 221 acres of forest. In connection with its initial application, the Developer requested a waiver[13] under the applicable provisions of the

---

[11] As we will discuss in more detail herein, the Forest Conservation Act requires local jurisdictions with planning and zoning authority to adopt and implement a forest conservation program. NR § 5-1605. Harford County has incorporated its Forest Conservation Program in the zoning chapter of the Harford County Code ("HCC"), §§ 267-34–267-48.

[12] "Forest stand delineation" is defined as "the methodology for evaluating the existing vegetation on a site proposed for development, taking into account the environmental elements that shape or influence the structure or makeup of a plant community." NR § 5-1601(p).

[13] As we will discuss in more detail, the Harford County Forest Conservation Program contains provisions for a "waiver" from the retention and protection priorities as established by the Act and the Harford County Forest Conservation Program, in addition to a variance process. That said, the criteria for a "waiver" are the same as the criteria established by DNR for a "variance." *See* NR § 5-1611; Code of Maryland Regulations ("COMAR") 08.19.03.01, model ordinance Article XIV.

Harford County Forest Conservation Ordinance to permit the removal of 58 large specimen trees from the property.

After the initial forest conservation plan submission, the County's Development Advisory Committee (the "DAC") requested revisions to the forest conservation plan, including revisions that would reduce the impact upon specimen trees.[14] Thereafter, the Developer worked with the County Department of Planning and Zoning to reduce the impact on the identified specimen trees, including reducing the limits of clearance and disturbance, and realigning the road network to avoid and minimize the impact on the specimen trees identified in the initial forest conservation plan and specimen tree waiver request. The Developer submitted a revised forest conservation plan that was approved by a letter issued by the Department of Planning and Zoning on December 9, 2019. The approval letter included an approval of not only the Developer's final forest conservation plan (the "Forest Conservation Plan"), but also the Developer's request for a specimen tree waiver (the "Waiver") to permit the removal of 49 specimen trees. In connection with the Waiver, the Department of Planning and Zoning recited the requirements that the Developer must satisfy to obtain a waiver under the Harford County Forest Conservation Program:[15]

---

[14] As we explain more fully in Part II.D. and note 29 *infra*, the Harford County Code has established a Development Advisory Committee ("DAC"), which consists of several county agencies that review subdivisions of more than five residential lots and developments composed of institutional and commercial sites.

[15] Where an administrative agency is required to make findings of fact, our case law requires that the agency do more than simply recite the criteria under the statute. *See, e.g.*, *Bucktail v. Talbot County*, 352 Md. 530, 558–59 (1999) (remanding a matter to the county

6

Denial of the waiver would deprive the property owner's rights commonly enjoyed by others. The granting of the waiver would not confer any special privilege on the Owner/Developer, which would be denied to others. The waiver is necessary due to the specific site conditions and not a result of the actions of the owner/developer. The waiver has not arisen from a condition on a neighboring property. The removal of these trees will not adversely affect water quality. The developer will be required to provide Stormwater Management, Environmental Site Design practices and erosion and sediment control in accordance with the latest version of Harford County's Stormwater Management ordinance and Maryland Department of Environment (MDE) standards and specification[s] for soil erosion and sediment control and MDE's enhance[d] best [m]anagement practices for Tier II waters to ensure no reduction or adverse impacts to water quality. Given these specific site conditions, the Director of Planning and Zoning her[e]by grants the waiver to impact forty-nine (49) specimen trees identified with this Forest Conservation Plan.

In addition to approving the Waiver, the approval letter set forth the required conditions associated with the proposed development of the property under the Harford County Forest Conservation Program, including: the requirements that the Developer post a surety bond to assure the planting and survival of the required on-site reforestation, identify buffers and forest retention areas on final plats, and protect existing forest edges prior to and throughout construction.

On January 8, 2020, the Chesapeake Bay Foundation, Inc. ("CBF") and several residents who live adjacent to the Developer's site filed a petition for judicial review of the Forest Conservation Plan in the Harford County Circuit Court. The petition was filed pursuant to Maryland Rule 7-202 and Section 268-28.A. of the Harford County Code,

council to make meaningful findings of fact where the county body, acting in an adjudicative role, recited statutory criteria and made boilerplate resolutions that precluded judicial review). We express no opinion concerning the sufficiency of the factual findings associated with the Waiver. Therefore, that issue may be raised in connection with any subsequent proceedings.

7

which provides that "[a]ny interested person whose property is effected [sic] by any decision of the Director of Planning, may within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County."

While the appeal of the Forest Conservation Plan was pending in the circuit court, the Developer continued with the County's development review process. The Developer submitted a preliminary plan application to the County, which proposed to consolidate multiple existing parcels of record and to create a public road and nine lots. The preliminary plan was approved on January 17, 2020. Thereafter, the Developer submitted site plan applications for three lots depicting the proposed buildings, structures, and uses for each lot. The site plan for Lot 1 was approved on February 19, 2020. The site plan for Lots 2 and 3 were both approved on February 24, 2020. CBF and the adjacent property owners did not appeal the preliminary plan approval or the approval of the site plans for the three lots.

## B. Circuit Court Proceedings

On March 27, 2020, the Developer and the Harford County Department of Planning and Zoning filed a motion to dismiss the petition for judicial review.[16] The Developer argued that CBF's petition was improper under Maryland case law because only final decisions of an administrative agency are subject to judicial review. The Developer

---

[16] The Developer and the Harford County Department of Planning and Zoning are both parties to this matter. Their interests are aligned, and they have filed joint briefs in the Court of Special Appeals and in this Court. For ease of reference, we will refer to Developer and the County Department of Planning and Zoning collectively as the "Developer."

8

contended that the approval of the Forest Conservation Plan is not a final decision under Maryland law, and therefore, the appeal was premature. In its opposition to the motion to dismiss, CBF agreed that only final decisions may be appealed but argued that the approval of the Forest Conservation Plan was a final decision.

After a hearing, on August 19, 2020, the circuit court judge entered a memorandum opinion and order granting the motion to dismiss, concluding that the Forest Conservation Plan is not a final decision because it is only one component of the preliminary and final site plan. The court reasoned that once the Forest Conservation Plan was approved, "there was more for the agency to do" regarding the overall site plan application and, therefore, there was no final decision until the final site plan was approved.

### C. Court of Special Appeals Proceedings

After CBF filed an appeal to the Court of Special Appeals, the intermediate appellate court affirmed the circuit court's decision. *Chesapeake Bay Foundation, Inc. v. CREG Westport I, LLC*, 252 Md. App. 470 (2021). The Court of Special Appeals also concluded "that preliminary plan approval, or site plan approval, are 'final' actions of the Department [of Planning and Zoning], which only then trigger judicial review of any of the components of the approved plans" under the applicable provisions of the Harford County Charter and the County Code. 252 Md. App. at 485. The Court of Special Appeals stated:

> The mere approval of the [Forest Conservation Plan] during the process leaves 'more for the agency to do,' such as assessing the impact that the development will have on local traffic, storm water management, surveys and the creation of plats, public hearings, etc. The goal, and therefore the final stage in the process, is for the developer to commence construction.

9

That may only occur after the site plan is ultimately approved. Consequently, to allow judicial review of [a forest conservation plan] in the middle of the zoning approval process would amount to the type of 'piecemeal' consideration of administrative decisions which the Court of Appeals has strongly disfavored.

*Id.* (citations omitted).

CBF filed a petition for a writ of *certiorari*, which we granted to consider the following questions, which we have rephrased:[17]

1. Do the provisions of the Forest Conservation Act require an opportunity for the direct appeal of an approved forest conservation plan?

2. Does the approval of a forest conservation plan constitute a final agency action subject to judicial review?

For the reasons that follow, we answer both of these question in the affirmative and reverse the judgment of the Court of Special Appeals.

## II

### Discussion

The questions presented here involve questions of law, which we consider *de novo*. *Talbot County v. Miles Point Prop., LLC*, 415 Md. 372, 384 (2010). The issues presented in this case are relatively straightforward. The parties agree that under principles of

---

[17] The questions presented in the petition for writ of *certiorari* are:

> 1) Whether the Forest Conservation Act requires an opportunity for direct appeal or judicial review of an approved forest conservation plan independent of any subsequent subdivision or zoning approvals?

> 2) Whether the approval of a forest conservation plan required by state law is a final agency action subject to judicial review?

10

administrative law, which we discuss in more detail below, only a final decision of an administrative agency is appealable. The sole issue in dispute is whether the approval of a forest conservation plan is a final decision, and therefore, subject to a petition for judicial review pursuant to the appeal process established by the Harford County Code. We hold that it is. To explain our holding, it is useful to review the Maryland Forest Conservation Act, the regulations promulgated by the Department of Natural Resources that implement the Act, and the provisions of the Harford County Code applicable to a forest conservation plan.

## A. *The Forest Conservation Act*

The Forest Conservation Act is a comprehensive effort to stem the loss of the State's forest cover.[18] The Act establishes afforestation,[19] conservation, and reforestation[20] requirements for subdivision plans and projects that require a grading or sediment control permit involving areas of 40,000 square feet or more. NR § 5-1602(a). The requirements

---

[18] The Maryland Forest Conservation Act, NR § 5-1601, *et seq.* (the "Act") defines "forest" generally as a "biological community dominated by trees and other woody plants covering a land area of 10,000 square feet or greater." NR § 5-1601(k)(1).

[19] "Afforestation" is defined as "the establishment of a tree cover on an area from which it has always or very long been absent, or the planting of open areas which are not presently in forest cover." NR § 5-1601(b).

[20] "Reforestation" is defined, in part, as "the creation of a biological community dominated by trees and other woody plants containing at least 100 trees per acre with at least 50% of those trees having the potential of attaining a 2 inch or greater diameter measured at 4.5 feet above the ground, within 7 years." NR § 5-1601(gg)(1). The term includes "landscaping of areas under an approved landscaping plan that establishes a forest that is at least 35 feet wide and covering 2,500 square feet of area." NR § 5-1601(gg)(2).

11

of the Act apply to units of the State government, local government, and private entities. NR §§ 5-1601(dd), 5-1602(a).[21]

Under the Act, a person seeking a permit for a subdivision or a grading or sediment control permit on areas greater than 40,000 square feet must arrange for a licensed forester, licensed landscape architect, or other qualified professional to prepare a forest stand delineation to be used during the preliminary review process to determine the most suitable and practical areas for forest conservation. NR § 5-1604(a)–(b)(1). Following approval of the forest stand delineation, the applicant must arrange for a qualified professional to prepare a proposed forest conservation plan. NR § 5-1605(b). Among other requirements, the forest conservation plan must include a map of the site, an anticipated construction timetable relating to the site and conservation requirements, an afforestation or reforestation plan, and a two-year management agreement addressing how the areas designated for afforestation or reforestation will be maintained. NR § 5-1605(c). The applicant must obtain approval of the forest conservation plan from the forest conservation authority for that jurisdiction before a subdivision plan or grading or sediment control permit may be approved or issued. NR § 5-1608(b).

Afforestation and reforestation requirements are established by formulas set forth in the Act. NR § 5-1606. The Act also provides a preferred sequence for afforestation and reforestation, and priorities for certain trees, shrubs, and plants, as well as specified areas

---

[21] The Act creates some exemptions, which are set forth in NR § 5-1602(b)(1)–(13), such as routine maintenance of public utility rights-of-way, certain agricultural activities, and a county that maintains 200,000 acres or more of its land area in forest cover.

12

that should be protected or left in an undisturbed condition, unless the applicant has demonstrated, to the satisfaction of DNR or the local authority, that reasonable efforts have been made to protect them and that the plan cannot be reasonably altered. NR § 5-1607. Where afforestation and reforestation cannot reasonably be accomplished either on-site or off-site, the Act establishes a fee that may be paid in lieu of the planting requirement, which is paid into the State Forest Conservation Fund or a local forest conservation fund. NR § 5-1610.

The Act also establishes the timing of an applicant's submission of a forest conservation plan in the development approval process. NR § 5-1608(a) provides that "[t]he review of the forest conservation plan shall be concurrent with the review process of the State or local authority for the subdivision plan, or the grading or sediment control permit, whichever may be submitted first." In addition, an applicant shall have an approved forest conservation plan that complies with the Act before "the approval of the final subdivision plan, or the issuance of the grading or sediment control permit by the State or local authority." NR § 5-1608(b).

DNR and local governments that have adopted their own programs are authorized to enforce the Act through administrative proceedings, such as revoking approval of a forest conservation plan and issuing a stop work order. NR § 5-1612(a)–(c). If a person fails to comply with the Act, related regulations promulgated by DNR, a forest conservation plan, or an associated management agreement, DNR or a local authority are authorized to assess a monetary penalty. NR § 5-1608(c)(1). Additionally, DNR and the local authority may bring civil actions for injunctive relief or to impose a civil monetary

13

penalty for ongoing violations. NR § 5-1612(d). If the local authority proceeds with enforcement authority, it is required to give notice to DNR within 15 days after the commencement of the enforcement authority. NR § 5-1612(e).

### B. Implementation of the Act by DNR and Local Jurisdictions Having Planning and Zoning Authority

The Act became effective on July 1, 1991. 1991 Md. Laws, Ch. 255. DNR was directed to adopt regulations, including a technical guidance manual and a model ordinance by December 31, 1991. NR § 5-1609(a).[22] Thereafter, all units of government with planning and zoning approval were required to submit a proposed forest conservation program to DNR by April 30, 1992. NR § 5-1603(a)(2). Following DNR's approval, each unit was directed to formally adopt the program and submit its adopted program to the Department by December 31, 1992. NR § 5-1603(c)(1). Local forest conservation programs were required to "meet[] or [be] more stringent than the requirements and

---

[22] The Act requires that DNR adopt regulations to implement the Act, and to create requirements and standards, establishing, among other things:

1. Standards of performance required in forest stand delineations and forest conservation plans including the submittal process;

2. Criteria for local forest conservation programs; and

3. Implementation processes for the Department's administration in the absence of a local conservation program.

NR § 5-1609(a)(1)(i).

standards" of the Act.  *Id.*  The Act requires that local forest conservation programs be approved by DNR, and include the following:

> (i)    A policy document and all applicable new and amended local ordinances relating to the implementation of the regulated activities, exemptions, the review, approval and appeal processes, incentives, legal instruments for protection, enforcement program, and penalties; and

> (ii)   A technical manual which outlines the submittal requirements for forest stand delineations, required information for the approval of a forest conservation plan, specific forest conservation criteria and protection techniques.

NR § 5-1603(c)(2).  The Act also authorizes DNR and local authorities to create a variance process—which enables an applicant to avoid the strict application of a requirement in the Act—in certain circumstances where the applicant can demonstrate that the applicant can satisfy certain criteria.  NR § 5-1611.[23]

---

[23] NR § 5-1611 states:

(a) In the preparation of the State or local conservation programs, the State and local authorities shall provide for the granting of variances to the requirements of this subtitle, where owing to the special features of a site or other circumstances, implementation of this subtitle would result in unwarranted hardship to an applicant.

(b) Variance procedures adopted under this section shall:

   (1) Be designed in a manner consistent with the spirit and intent of this subtitle; and

   (2) Assure that the granting of a variance will not adversely affect water quality.

15

For municipalities with planning and zoning authority, the Act permits a municipality, with the concurrence of DNR and the county in which it is located, to assign its obligations under the Act to the county. NR § 5-1603(a)(4). Additionally, if a local government fails to adopt an approved forest conservation program, DNR must develop a state-level process to review forest conservation plans for that jurisdiction. NR §§ 5-1603(d), 5-1603(e)(2)(ii)(3). DNR has continuing review authority over local programs and is directed to conduct biennial reviews of each local jurisdiction's program. NR § 5-1603(e).[24] In addition to the biennial reviews, on or before September 30 each year, DNR is required to submit, to two legislative committees, a statewide report compiled from local authorities' reports to DNR regarding certain aspects of the forest conservation programs

---

[24] In accordance with DNR's statutory obligation to conduct a biennial review of local jurisdictions' forest conservation plans, as well as DNR's annual reporting requirements in NR § 5-1613, the Department publishes data related to the local jurisdictions' forest conservation plans. As reflected in the State Forest Conservation Program Annual Report for FY19, https://perma.cc/3EM2-78TY, many municipalities with planning and zoning authority have either assigned their forest conservation compliance obligations to the county government in which the municipality is located or have elected for DNR to conduct "State program review" of forest conservation plans that are submitted in their jurisdiction. For example, the City of Taneytown has assigned responsibility for forest conservation requirements to Carroll County. *See* City of Taneytown Code, § 116-1 (stating that "[t]he Carroll County Forest Conservation Ordinance . . . shall be the official Forest Conservation Ordinance for the City of Taneytown, Maryland and such an ordinance is hereby adopted by reference. The official of the county shall be the inspector and/or enforcement official for the city for this purpose."). Other jurisdictions, such as the Town of Ridgely, in Caroline County, have elected for DNR to conduct its forest conservation review. *See* Ridgely Town Code § 98-2 (stating that "[t]he Department of Natural Resources (DNR) . . . is hereby designated to perform the requirements of [NR] § 5-1603(c)(3)(i) and (ii) . . . and to administer the Ridgely Forest Conservation Program, the cost of all of which shall be borne by the DNR").

16

throughout the State.[25] NR § 5-1613. Since the Act's enactment, DNR has compiled five-, ten-, and fifteen-year reviews that analyze the forest cover in Maryland.

In late 1991, DNR promulgated regulations and a model ordinance, which became effective on January 20, 1992. 19:1 Md. Reg. 24 (1992); *see* Code of Maryland Regulations

---

[25] Specifically, NR § 5-1613 states:

On or before September 30 of each year, the Department shall submit, subject to § 2-1257 of the State Government Article, to the Senate Education, Health, and Environmental Affairs Committee and the House Environment and Transportation Committee a statewide report, compiled from local authorities' reports to the Department, on:

(1) The number, location, and type of projects subject to the provisions of this subtitle;

(2) The amount and location of acres cleared, conserved, and planted, including any areas which utilize forest mitigation bank credits or areas located in the 100 year floodplain, in connection with a development project;

(3) The amount of reforestation and afforestation fees and noncompliance penalties collected and expended, the number of acres for which the fees were collected, and the number of acres reforested, afforested, or conserved using the fees;

(4) The costs of implementing the forest conservation program;

(5) The size, location, and protection of any local forest mitigation banks which are created under a local or State program;

(6) The number, location, and type of violations and type of enforcement activity conducted in accordance with this subtitle; and

(7) To the extent practicable, the size and location of all conserved and planted forest areas, submitted in an electronic geographic information system or computer aided design format.

17

("COMAR") 08.19.01–.06.[26]  Notably as it pertains to the issue presented in this case, the regulations require that the local authority demonstrate that the "hearing and appeal procedures" associated with the review and approval of forest stand delineations and forest conservation plans are "consistent with the local appellate review procedures."  COMAR 08.19.02.02.C(3).[27]

The model ordinance contains provisions for the establishment of a variance from the requirements of a local forest conservation program or the requirements of NR §§ 5-1601–5-1612 if the person requesting the variance can demonstrate that enforcement of the

---

[26] DNR's regulations implementing the Forest Conservation Act are codified in COMAR, Title 8, Subtitle 19.  Chapter 1 of that subtitle contains general provisions, including definitions of terms, a description of the application of the Act, and exemptions. Chapter 2 addresses DNR's review and approval of local programs.  Chapter 3 provides a model ordinance for local jurisdictions' implementation of the Act.  Chapter 4 establishes the State Forest Conservation Program.  Chapter 5 governs forest conservation maintenance and management agreements.  Chapter 6 outlines DNR's training and enforcement responsibilities and sets forth the professional qualifications necessary to prepare a forest stand delineation or forest conservation plan.

[27] COMAR 08.19.02.02(C) states:

Under the administrative review, approval, and appeal procedures, the local authority shall demonstrate that:

(1)  The review process for the forest stand delineation, simplified forest delineation plan, or substitute plan […] and the forest conservation plan is consistent with the local development review process;

(2)  Approval of a subdivision, project plan, or issuance of either a grading or sediment control permit is contingent upon the approval of a forest conservation plan; and

(3)  The hearing and appeal procedures are consistent with the local appellate review procedures.

18

Act or local program would result in an unwarranted hardship. COMAR 08.19.03.01, Article XIV. The model ordinance specifies that a variance under the Forest Conservation Act is "not a zoning variance" and establishes criteria that the applicant must satisfy to obtain a variance.[28] COMAR 08.19.03.01.2.63B. To grant a variance, the department with approving authority "shall make findings that the applicant has met the requirements" for obtaining a variance before granting it. COMAR 08.19.03.01.14.1C. The model ordinance further establishes the "right and authority of the [DNR] to initiate or intervene in an administrative, judicial, or other original proceeding or appeal in the State concerning an approval of a variance under [NR] §§ 5-1601–5-1612" or a local forest conservation program. COMAR 08.19.03.01.14.1E.

---

[28] Specifically, under the model ordinance, an applicant for a variance shall:

(1) Describe the special conditions peculiar to the particular property which would cause the unwarranted hardship;

(2) Describe how enforcement of these rules will deprive the applicant of rights commonly enjoyed by others in similar areas;

(3) Verify that the granting of the variance will not confer on the applicant a special privilege that would be denied to other applicants;

(4) Verify that the variance request is not based on conditions or circumstances which are the result of actions by the applicant;

(5) Verify that the variance request does not arise from a condition relating to land or building use, either permitted or nonconforming, on a neighboring property; and

(6) Verify that the granting of a variance will not adversely affect water quality.

19

### C. *Harford County's Forest Conservation Program*

In July 1991, the Harford County Council enacted legislation to comply with the requirements of the newly enacted Act. The Harford County Forest Conservation Program is codified in Article VI, §§ 267-34 through 267-48 of the Harford County Code. The Harford County Forest Conservation Program incorporates the requirements of the Act and is generally consistent with the model ordinance, with some relatively minor revisions to conform to the locality. For example, Harford County has designated the Department of Planning and Zoning as the agency responsible for approving forest conservation plans for the County, *see* HCC § 267-35.A., and has designated the Director of Planning as the individual who may grant waivers from the priority retention and protection provisions under the Harford County Forest Conservation Program, *see* HCC § 267-39.F.

Consistent with the provisions of the Act and the COMAR requirements, a forest conservation plan must be submitted with the first of the following submissions for the site: a preliminary subdivision plan; an application for a grading permit; or an application for a building permit. HCC § 267-37.B.(1). Within 45 calendar days after receipt of a forest conservation plan, the Department "shall notify the applicant whether the [f]orest [c]onservation [p]lan is complete and approved." HCC § 267-37.C. "If the Department fails to notify the applicant within 45 calendar days, the plan shall be treated as complete and approved." *Id.* The Department may require "additional information or extend the deadline for an addition [sic] 15 calendar days under extenuating circumstances." *Id.* "At the request of the applicant, the Department may extend the deadline under extenuating circumstances." *Id.* "The Department's review of a [f]orest [c]onservation [p]lan shall be

20

concurrent with the review of the subdivision plan, grading permit application or building permit application associated with the project." HCC § 267-37.D. If a forest conservation plan is required, "a person may not cut, clear or grade on the development site: (1) Until the Department has approved the plan; or (2) In violation of the approved plan." HCC § 267-37.G.

Consistent with the provisions of the Act and the COMAR regulations, certain "trees, shrubs, plants and specific areas shall be considered priorities for retention and protection and shall be left in an undisturbed condition," including trees having a diameter breast height ("DBH") of "[t]hirty inches or more." HCC § 267-39.D. The Director of Planning has the authority to grant a waiver from "Subsection D" if the applicant has demonstrated to the satisfaction of the Department of Planning and Zoning that enforcement would result in an unwarranted hardship. HCC § 267-39.F. The applicant shall:

(1) Describe the special conditions peculiar to the particular property which would cause the unwarranted hardship;

(2) Describe how enforcement of these rules will deprive the applicant of rights commonly enjoyed by others in similar areas;

(3) Verify that the granting of the waiver will not confer on the applicant a special privilege that would be denied to other applicants;

(4) Verify that the waiver request is not based on conditions or circumstances which are the result of actions by the applicant;

(5) Verify that the waiver request is not based on conditions relating to land or building use, either permitted or nonconforming, on a neighboring property; and

21

(6) Verify that the granting of a variance will not adversely affect water quality.

§ 267-39.F.  The Department of Planning and Zoning is required to give notice of the request for a waiver to DNR within 15 days of receipt of the request.  HCC § 267-39.G.

As reflected above, a developer may receive approval of a forest conservation plan in 45 days.  Once a forest conservation plan is approved, the developer may then obtain preliminary plan approval.  *See* HCC § 268-19.C.(11) (stating that if a forest conservation plan is required, "the preliminary plan shall not be approved until the forest conservation plan has been approved by the Department of Planning and Zoning[]").  In addition, a forest conservation plan may not change once it is approved.  *See* HCC § 267-37.E.(3) (stating that the Department of Planning and Zoning may revoke an approved Forest Conservation Plan if it finds that "changes in the development or in the condition of the site necessitate the preparation of a new or amended development plan").

### D.  *Harford County Development Process Generally*

At the preliminary plan and site plan approval stages, the developer is required to make additional submittals, including stormwater management plans, a traffic impact analysis, a landscaping/lighting/buffer plan, and development details such as impervious surface and building coverage percentages, setbacks, and proposed uses of structures, as well as other information and documentation required under the subdivision regulations. Subdivisions of more than five residential lots and developments of institutional and commercial sites must be reviewed by the DAC, which consists of several county agencies.

22

HCC § 268-19.C.[29]  In addition to the DAC, the plan is also provided to various state agencies[30] and the U.S. Army Corps of Engineers, for comment, when appropriate.  DAC meetings are open to the public and include an opportunity for comments by attending citizens.  HCC § 268-19.C.(2).

After the review process is concluded, the Department of Planning and Zoning may approve a preliminary plan, which is valid for three years, and which may be extended. HCC § 268-19.C.(12).  A one-time, two-year extension of the preliminary plan may be granted provided that the developer meets certain conditions.  HCC § 268-19.C.(13).

With respect to appeals, the appeal provisions contained in the County's subdivision regulations provide, in pertinent part, that "[a]ny interested person whose property is effected [sic] by any decision of the Director of Planning may within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County." HCC § 268-28.A.[31]

---

[29] Membership in the DAC "shall include," but is not limited to, the following: the Department of Planning and Zoning, the Department of Public Works, the Health Department, the Department of Parks and Recreation, the Soil Conservation District, the Sheriff's Office, Harford County Public Schools, and Emergency Operations.  HCC § 268-19.C.(1)(a).

[30] The state agencies that receive a copy of the plans submitted to the DAC include, but are not limited, to the State Highway Administration, MDE, and DNR.  HCC § 268-19.C.(1)(b).

[31] Although the appeal provisions set forth in HCC § 268-28.A refer to the right to appeal any decision of the "Director of Planning," there appears to be no dispute that the right to appeal also applies to final decisions of the Department of Planning and Zoning that arise under the Harford County subdivision regulations.  The parties dispute whether the decision here is a "final" decision.  There is no dispute that a final decision of the Department is subject to the appeal provisions contained in the Harford County Code.

The question here is whether the Department of Planning and Zoning's approval of the Forest Conservation Plan, and the Director's related approval of the associated Waiver, is a "final decision" that is subject to a right of appeal that is independent from any right of appeal of the final approval of a site plan or subdivision plat.

### E. Approval of a Forest Conservation Plan is a Final Agency Decision Subject to Judicial Review

"It is a basic tenet of administrative law that '[w]here an administrative agency has primary or exclusive jurisdiction over a controversy, the parties to the controversy must ordinarily await a final administrative decision before resorting to the courts for resolution of the controversy.'" *Board of Public Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 443 Md. 199, 215 (2015) ("*Hovnanian*") (quoting *State v. Maryland State Bd. of Contract Appeals*, 364 Md. 446, 457 (2001)). "To be 'final,' the order or decision must dispose of the case by deciding all question of law and fact and leave nothing further for the administrative body to decide." *Town of Upper Marlboro v. The Prince George's County Council*, 480 Md. 167 (2022) (quoting *Willis v. Montgomery County*, 415 Md. 523, 535 (2010)); *see also Hovnanian*, 443 Md. at 215. Stated another way, ordinarily, an "agency order is not final when it is contemplated that there is more for the agency to do." *Kim v. Comptroller of Treasury*, 350 Md. 527, 534 (1998). "It is well-established that '[t]he salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions.'" *Hovnanian*, 443 Md. at 222 (quoting *Driggs Corp. v. Maryland Aviation Administration*, 348 Md. 389, 407 (1998)).

The parties agree that, for the Forest Conservation Plan to be an appealable agency action, it must be a "final decision" of the agency. They disagree on whether the approval of the Forest Conservation Plan is a final decision. The Developer contends that it is not a final agency decision because the Forest Conservation Plan does not permit the Developer to undertake any construction activity, and that it is "merely a requirement and element of the preliminary plan and site plan applications and checklists." According to the Developer, the Forest Conservation Plan is not a final decision because there is "more for the agency to do." The Developer characterizes the Forest Conservation Plan as "part and parcel" of the preliminary plan and site plans, which the Developer contends *are* the final decisions of the Department and *are* subject to appeal. The Developer contends that the Forest Conservation Plan may only be appealed as part of an appeal of a preliminary plan or site plan.

On the other hand, CBF argues that the Department of Planning and Zoning's approval of the Forest Conservation Plan, and the associated Waiver, *is* a final agency decision because it marks the end of the decision-making process as it pertains to the Plan. CBF contends that the approval of the Forest Conservation Plan is a separate and distinct administrative agency action that, once approved, remains fixed and static. In other words, it cannot change as the County undertakes the development review process associated with a site plan or subdivision plan. We agree with CBF.

*1. The Act Clearly Contemplates a Right to an Appeal of a Forest Conservation Plan*

First, as discussed above, a forest conservation plan is required by State law and must be approved prior to the approval of a subdivision plan or a site plan. NR § 5-1608. The Act establishes the minimum standards that must be included in a local forest conservation program. It requires any "unit of local government having planning and zoning authority" to "develop a local forest conservation program, *consistent with the intent, requirements and standards* of this subtitle." NR § 5-1603(a)(1) (emphasis added). Local programs must "meet[]" or be "more stringent than the requirements and standards" of the Act. NR § 5-1603(a)(2). The Act therefore establishes the minimum substantive standards and procedural requirements that local jurisdictions must include in their local programs. One such procedural requirement is an appeal process. The Act states that a "local forest conservation program . . . shall include[] a policy document and all applicable new and amended local ordinances relating to implementation of the regulated activities, exemptions, *the review, approval and appeal processes*, incentives, legal instruments for protection, enforcement program, and penalties[.]" NR § 5-1603(c)(2)(i) (emphasis added). DNR's criteria for local forest conservation programs similarly require that the local jurisdiction demonstrate that the "hearing and appeal procedures" associated with the review and approval of forest stand delineations and forest conservation plans are "consistent with the local appellate review procedures." COMAR 08.19.02.02C. The Act and implementing regulations, by their plain and unambiguous language, require that local

forest conservation programs have "appeal procedures" in place as part of their local programs.

The Harford County Code provides an avenue for appealing decisions of the Director of Planning and Zoning in the subdivision regulations. Specifically, HCC § 268-28 states that "[a]ny interested person whose property is effected [sic] by any decision of the Director of Planning, may within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County."[32] Although the appeal provision of the HCC does not state that only "final" decisions may be appealed, we agree with the parties that under basic principles of agency law, only final decisions of the Department or Director may be appealed.

---

[32] The parties agree that the subdivision provisions and the zoning provisions of the Harford County Code (in which the Forest Conservation Program is located) must be read together and consistently with one another. The Harford County Charter, Article VII, Section 709 contains the following right of appeal:

> Any person aggrieved by any final decision in a zoning case shall have the right to appeal that decision to the Circuit Court for Harford County and shall have the further right of appeal to the Court of Appeals of Maryland. The words "person aggrieved" shall be liberally construed to substantially broaden that class of persons and shall be interpreted to effectuate the general purposes of this article.

The parties also agree that neither the approval of a forest conservation plan, nor a site plan, would be considered a "zoning case." That said, the Harford County Charter and the Harford County subdivision provisions clearly contemplate that any appeal of a final decision of the Department of Planning and Zoning, or its Director, arising under either the zoning code or the subdivision regulations, is to be filed in the Circuit Court for Harford County.

*2. The Approval of a Forest Conservation Plan is a Separate and Distinct Agency Decision*

A forest conservation plan is a separate and distinct State-required approval that establishes the location and number of trees that may be cleared from a site. On a site that contains significant forest cover—which is the case with the proposed Abingdon Business Park—the approval of a forest conservation plan establishes the location and extent of the building envelope and development footprint on a particular site. The approval of a forest conservation plan marks the end of the County's decision-making process with respect to the location and extent of tree removal on a site. It is completely independent from other state or county development approvals. Neither the County nor the Developer may change the parameters of a forest conservation plan during the development process once it has been approved. In this respect, a forest conservation plan approval is different from other county approvals in connection with the development plan such as a traffic impact analysis or a stormwater management plan, which may change as the development plans evolve.

Under the Act, the regulations promulgated by DNR, and the provisions of the Harford County Code, we determine that the County's approval of a forest conservation plan is a separate and distinct agency action. It is independent from the County's site plan approval process. Although it is a condition precedent to the approval of a preliminary plan or site plan, we reject its characterization as simply being "part and parcel" of the County's development review process. It is a separate approval required by State law with distinct substantive criteria, and for which a right of appeal is required under the Act and DNR's regulations.

The separate and distinct nature of the forest conservation plan approval process would be more obvious or intuitive if, hypothetically, the proposed development had occurred in a municipality that had planning and zoning authority, but that did not have its own municipal forest conservation program. As we pointed out in footnote 24, there are several municipal jurisdictions that have either assigned forest conservation approval to the county in which the municipality is located or to DNR. In such instances, if a county agency or DNR were the approving authority for forest conservation plans associated with development within the municipality, clearly the approval of a forest conservation plan would be a final decision because there would be nothing further for the county or DNR to do in connection with subsequent development approvals by the municipality. Here, the fact that the Department of Planning and Zoning also approves the preliminary plan or site plan does not transform forest conservation plan approval into a fluid component of the preliminary plan approval process. It is a separate approval under the Act, with statutory and regulatory criteria that must be applied by the approving agency.[33] Once the plan is

---

[33] In support of its position that the Forest Conservation Plan is not a final agency decision, but instead, "a constituent element of the entire development plan," the Dissent points to the language in the Act, as well as the Harford County Forest Conservation Program, which require that the review of the forest conservation plan "shall be concurrent" with the review of the subdivision plan, grading permit application, or building permit associated with the project. Dissent Op. at 3, 8, 11. Respectfully, we disagree. The fact that the Act and the local program require that a forest conservation plan be reviewed concurrently with other development approvals relates solely to the *timing* of the forest conservation plan review and approval process. This timing sequence makes sense because a site plan, subdivision plat, grading permit, or building permit cannot be finalized unless and until the forest conservation plan is approved. In many development projects, although the forest conservation plan review may commence concurrently with other development plan reviews, the forest conservation plan will be approved months, or even years before the approval of the final plan. The forest conservation plan, once approved, does not

29

approved, it is final and may not change during the remainder of the development approval process.

The separate and final nature of the approval of a forest conservation plan would also be apparent if the *Developer* had been the party who filed a petition for judicial review of a *denial* of the plan—as opposed to the procedural posture presented in this case—where CBF and the adjacent landowners have filed a petition for judicial review of the *approval* of the plan. If the Department of Planning and Zoning had *denied* the approval of the Developer's Forest Conservation Plan and associated Waiver, and consequently the Developer was prohibited from removing *any* specimen trees from the site, such a denial would certainly have an adverse impact on any potential development plans on the property. That denial would be a final decision, and the Developer would have a right to file a petition for judicial review. Just as the *denial* of a forest conservation plan or associated waiver would be a "final" decision for purposes of an appeal by the Developer, so too is the *approval* of the Forest Conservation Plan and the associated Waiver in this case.

Here, the Department of Planning and Zoning and its Director approved not only the Forest Conservation Plan, but also the Waiver, permitting the removal of 49 specimen trees from the site that would otherwise be protected under the Act, DNR's regulations, and the Harford County Code. The Director was required to make findings of fact with

change for the duration of the project. *See* HCC § 267-37.E.(3) (stating that the Department may revoke an approved Forest Conservation Plan if it finds that "changes in the development or in the condition of the site necessitate the preparation of a new or amended development plan").

respect to the criteria for granting waivers under the provisions of the Harford County Code. HCC § 267-39.F. The approval of the Forest Conservation Plan and associated Waiver was a final decision—there was nothing further for the Department of Planning and Zoning and its Director to do. Moreover, nothing in the development approval process could have modified or changed that decision. The Court of Special Appeals and circuit court erred in concluding that the approval of the Forest Conservation Plan was not a final decision that was subject to judicial review.[34]

Respectfully, we disagree with the intermediate appellate court that an appeal of the Forest Conservation Plan will lead to "piecemeal consideration" of a development plan "which [this Court] has strongly disfavored." *Chesapeake Bay Foundation*, 252 Md. App. at 485. Where a development plan involves an administratively distinct approval that is

---

[34] To be sure, there may be instances where an aggrieved party's right to file a petition for judicial review of a forest conservation plan, as well the right to file a petition for judicial review of separate development approval will converge. For example, where a county planning board adopts a *single resolution* as part of its development approval process that concurrently approves a preliminary plan, as well as a variance under the local forest conservation program, an aggrieved party may have the right to file a petition for judicial review of *all* approvals granted by the resolution. *See, e.g.*, *W. Montgomery County Citizens Ass'n v. Montgomery County Plan. Bd. of Maryland-Nat's Capital Park & Planning Comm'n*, 248 Md. App. 314, 347 (2020), *cert. denied sub. nom. W. Montgomery County Citizens Ass'n v. Montgomery County Planning Bd.*, 474 Md. 198 (2021) (upholding the county planning board's approval of a preliminary plan and variance under the county forest conservation plan where the board approved both the preliminary plan and tree variance in a single resolution). We are not suggesting that the right to file a petition for judicial review of a forest conservation plan will always be separate from the right to file a petition for judicial review of other development approvals. *In this case*, the Forest Conservation Plan and associated Waiver were approved separate from the site plan approvals. It was a final decision because there was nothing left for the Department to do. Under the applicable provisions of the Harford County Code, an aggrieved party had the right to file a petition for judicial review to the circuit court.

31

required under a State law, with a right to file a petition for judicial review, that right may be exercised independently from any other right to appeal that may arise in connection with a final approval of a site plan or subdivision plat. For example, an aggrieved party has a right to appeal a nontidal wetlands permit. *See* § EN § 5-204(f)(1); *Patuxent Riverkeeper v. Maryland Department of the Environment, et al.*, 422 Md. 294 (2011). By way of another example, where a property is located in the critical area, and the property owner or developer seeks a variance for the construction of a structure within the critical area buffer, there is a right to appeal a decision to grant a variance from the strict application of a local critical area program. *See* NR § 8-1808(d). These statutory rights of appeal exist independent from any right to appeal from a local government's approval of a final subdivision plat or development site plan. Here, we similarly determine that the approval of a forest conservation plan is an administratively distinct final decision for which there is an independent right of appeal. The Act, DNR's promulgated regulations, and the provisions of the Harford County Code all contemplate that a right of appeal exists from this final agency decision.

## III

### Conclusion

The Department of Planning and Zoning's approval of the Forest Conservation Plan and associated Waiver was a final decision, and CBF had the right to file a petition for judicial review under the Harford County Code. Approval of a forest conservation plan is a final administrative decision that is separate and distinct from other County approvals

under the Harford County development process. Although the Act permits DNR to delegate responsibility for administering the Act to local jurisdictions through the adoption of local forest conservation programs, it is a separate and distinct process. The Act and the DNR regulations contemplate that persons aggrieved by a decision arising from a forest conservation plan approval shall have a right to appeal in accordance with appeal procedures established by the local jurisdiction. Under the provisions of the Harford County Code, that right to appeal is to the Circuit Court for Harford County.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.**

IN THE COURT OF APPEALS
OF MARYLAND

No. 53

September Term, 2021

_____

CHESAPEAKE BAY FOUNDATION,
INC., ET AL.

v.

CREG WESTPORT I, LLC, ET AL.
_____

Watts,
Hotten,
Booth,
Biran,
Raker, Irma S.,
 (Senior Judge, Specially Assigned)
McDonald, Robert N.,
 (Senior Judge, Specially Assigned)
Getty, Joseph, M.,
 (Senior Judge, Specially Assigned)

JJ.
_____

Dissenting Opinion by Hotten, J., which
Getty, C.J., joins.
_____

Filed: August 26, 2022

I respectfully dissent. The right to appeal an administrative decision derives entirely from statute. Even when a statute bestows the right to appeal an administrative decision, judicial policy requires the administrative decision to be final. The appeal of the approved forest conservation plan violates both conditions precedent for judicial review. The right to a direct and independent appeal of an approved forest conservation plan is not provided by the plain language of the Forest Conservation Act, the Harford County Code, or the Harford County Charter. The approval of the forest conservation plan is likewise not a final administrative decision, but one of several necessary steps that must be completed before a land development proposal may be approved according to Harford County law. I would hold that the approval of the forest conservation plan is not judicially reviewable.

**A. There are no statutory provisions permitting direct appeal of a forest conservation plan.**

"[Q]uestions of appealability [are] entirely governed by statutes." *Prince George's Cnty. v. Beretta U.S.A. Corp.*, 358 Md. 166, 173, 747 A.2d 647, 651 (2000) (footnote omitted); *Maryland-Nat'l Capital Park & Planning Comm'n v. Smith*, 333 Md. 3, 7, 633 A.2d 855, 857 (1993) ("The right to take an appeal is entirely statutory, and no person or agency may prosecute an appeal unless the right is given by statute.") (quotation omitted); *see also Harvey v. Marshall*, 389 Md. 243, 273, 884 A.2d 1171, 1189 (2005) ("[I]n order for an administrative agency's action properly to be before this Court (or any court) for judicial review, there . . . must be a legislative grant of the right to seek judicial review."). We narrowly construe any grant of appellate authority. *Rush v. State*, 403 Md. 68, 98, 939 A.2d 689, 706 (2008).

1. Forest Conservation Act

A plain text and narrowly construed interpretation of the Forest Conservation Act, Md. Code Ann., Natural Resources ("Nat. Res.") §§ 5-1601–1613, demonstrates that there is no statutory right to a direct and independent appeal of an approved forest conservation plan. *See Antonio v. SSA Sec., Inc.*, 442 Md. 67, 74, 110 A.3d 654, 658 (2015) ("When interpreting statutes, our overarching goal is to ascertain and implement the intention of the [General Assembly]. . . . [If] the words of the statute, given their common and ordinary meaning are unambiguous and express a plain meaning, our inquiry stops normally and we interpret the statute as written.") (citation omitted).

Nat. Res. § 5-1603(a) obligates local governments with "planning and zoning authority" to "develop a local forest conservation program, consistent with the intent, requirements, and standards of [the Forest Conservation Act]." The statute requires local governments to specifically create, among other things, "[a] policy document and all applicable new and amended local ordinances relating to implementation of the regulated activities, exemptions, the review, *approval and appeal processes*, incentives, legal instruments for protection, enforcement program, and penalties[.]" Nat. Res. § 5-1603(c)(2)(i) (emphasis added).

Contrary to the assertions of the Chesapeake Bay Foundation, *et al.* ("Petitioner") Nat. Res. § 5-1603(c)(2)(i) does not establish a statutory right to appeal directly and independently the approval of a forest conservation plan. This provision generally requires a local government's forest conservation program to include a policy statement with a designated appeal process, but it does not set forth any specific requirements for the appeal

2

process of a forest conservation plan. It does not provide a direct and independent appeal of an approved forest conservation plan, and deriving such a right from the plain text would impermissibly stretch the meaning of Nat. Res. § 5-1603(c)(2)(i). *Soper v. Montgomery Cnty.*, 294 Md. 331, 335, 449 A.2d 1158, 1160 (1982) ("[N]either statutory language nor legislative intent can be stretched beyond the fair implication of the statute's words or its purpose.").

The statute clarifies that the appeal of an approved forest conservation plan must proceed concurrently with the review of other required components of a proposed land development. Nat. Res. § 5-1608 provides:

> (a) The review of the forest conservation plan *shall be concurrent* with the review process of the State or local authority for the subdivision plan, or the grading or sediment control permit, whichever may be submitted first.

> (b) Before the approval of the final subdivision plan, or the issuance of the grading or sediment control permit by the State or local authority, the applicant shall have an approved forest conservation plan that shall include the requirements in §§ 5-1605, 5-1606, and 5-1607 of this subtitle.

(Emphasis added and subtitles and other markings omitted). A direct and independent appeal of an approved forest conservation plan contravenes the plain text of Nat. Res. § 5-1608 because a forest conservation plan must be considered in conjunction with the subdivision plan or grading or sediment control permit before final approval may be granted.

The legislative history of the Forest Conservation Act confirms our plain text interpretation that there is no statutory right to appeal the approval of a forest conservation plan. It is "the modern tendency of this Court [] to continue the analysis of the statute

3

beyond the plain meaning to examine 'extrinsic sources of legislative intent' in order to 'check [] our reading of a statute's plain language' through examining 'the context of a statute, the overall statutory scheme, and archival legislative history of relevant enactments.'" *Berry v. Queen,* 469 Md. 674, 688, 233 A.3d 42, 50 (2020) (quoting *In re S.K.*, 466 Md. 31, 50, 215 A.3d 300, 311 (2019)). Analyzing the legislative history is typically conducted in situations involving ambiguous statutory language but may also be helpful in instances where the statutory language appears to be plain and unambiguous. *Blackstone v. Sharma*, 461 Md. 87, 113, 191 A.3d 1188, 1203 (2018) (quoting *State v. Roshchin*, 446 Md. 128, 140, 130 A.3d 453, 460–61 (2016)).

The legislative history of the Forest Conservation Act shows that local governments are tasked with "establish[ing]/manag[ing] their own forest conservation programs with technical assistance from the State." *See* Floor Report, Senate Bill 224, Senate Economic and Environmental Affairs Committee of the Maryland Senate, 1991 Leg., 401st Sess. (Md. 1991) at pg. 62. A letter written by Jeffrey L. Horan, Associate Director of Chesapeake Bay Programs, to David M. Jenkins, Government Affairs Committee Chairman of Charles County states that "coordination with local zoning ordinances and local subdivision ordinances will be left up to the individual counties." *See* Letter from Jeffrey L. Horan, Associate Director of Chesapeake Bay Programs, to David M. Jenkins, Government Affairs Committee Chairman of Charles County in legislative bill file for Senate Bill 224 (Md. 1991), at pg. 118.

In addition to the legislative history of the Forest Conservation Act, the conclusion that implementation of the requirements of the Forest Conservation Act are largely left to

4

local governments is evident in opinions from the Maryland Attorney General. In an April 29, 1992, letter to the Board of Commissioners of Carroll County, the Maryland Attorney General opined that "[t]he Forest Conservation Act reflects a legislative judgment that the forest conservation program is best implemented and administered at the local level." 77 Md. Op. Atty. Gen. 127 Opinion No. 92-011 (1992). Specifically, "the act recognizes that the forest conservation program is an integral part of the local governmental process for review and approval of any development project." *Id.* More recently in an October 21, 2015 letter to the Chair of the House Environment and Transportation Committee, the Maryland Attorney General advised that "the Act . . . generally leaves to the local jurisdictions (or the Department, with respect to developments that fall within the State's limited jurisdiction) the task of spelling out the details of how" the requirements of the Forest Conservation Act "must be satisfied under their respective plans." 100 Md. Op. Atty. Gen. 120 (2015).

The legislative history of the Forest Conservation Act shows that the intention of the legislature in enacting the Forest Conservation Act was to combat the loss of large tracts of forests in Maryland by requiring local governments to create a forest conservation program. *See* Floor Report, Senate Bill 224, Senate Economic and Environmental Affairs Committee of the Maryland Senate, 1991 Leg., 401st Sess. (Md. 1991) at pg. 369. As mentioned previously, the State, through the Department of Natural Resources, was to implement requirements for this plan, and local governments with planning and zoning authority were to meet or exceed these requirements. While the Department of Natural Resources set requirements that local governments with planning and zoning authority had

5

to abide by, it was left up to local governments to establish the review and approval process for forest conservation plans within their jurisdiction. As long as local governments complied with the requirements of the Forest Conservation Act, they had discretion in how their forest conservation plans were created, including the decision on whether to provide a direct appeal process. The General Assembly has amended Nat. Res. § 5-1603, the section regulating local forest conservation programs, numerous times since it was first enacted and none of those amendments added language explicitly requiring a right to appeal the approval of a forest conservation plan.[1]

## 2. Harford County Code and Charter

As the Forest Conservation Act does not require a statutory recourse for judicial review of a forest conservation plan and gives great deference to local government, if there were a right to appeal a forest conservation plan, it would lie within a county's code. After applying the same canons of construction of statutes to local ordinances and charters, *Kane v. Bd. of Appeals of Prince George's Cnty.*, 390 Md. 145, 161, 887 A.2d 1060, 1069 (2005), I conclude that the Harford County Code, like the Forest Conservation Act, does not

---

[1] *See* 1992, Md. Laws, Ch. 22, § 1 (annual corrective bill); 1993, Md. Laws, Ch. 489 (allowing clustering and other land use techniques as well as allowing local authority to establish procedures to recover costs stemming from local forest conservation plans); 1994, Md. Laws, Ch. 556 (adding a waiver of paved surfaces); 1997, Md. Laws, Ch. 559, § 2 (adding language reflecting state administered forest conservation plans); 1998, Md. Laws, Ch. 653 (cross listing with the Public Utility Companies Article); 2009, Md. Laws, Ch. 298 (removing waiver for paved surfaces); 2010, Md. Laws, Ch. 52 (changing "Public Utility Companies Article" to "Public Utilities Article"); 2013, Md. Laws, Ch. 384, § 3 (adding waiver for certain previously developed areas as well as granting the Department of Natural Resources enforcement mechanisms against local governments for non-compliance).

6

provide a statutory right to a direct and independent appeal of an approved forest conservation plan.

Petitioner contends that Harford County, Md., Code ("HCC") § 268-28A establishes such a right. HCC § 268-28A provides, in relevant part: "Any interested person whose property is [a]ffected by any decision of the Director of Planning, may within 30 calendar days after the filing of such decision, appeal to the Circuit Court for Harford County." Petitioner reasons that because the approval of a forest conservation plan is a decision of the Director of Planning, HCC § 268-28A authorizes a direct and immediate appeal.

While HCC § 268-28A authorizes an appeal of any decision by the Director of Planning, including the approval of a forest conservation plan, the plain text of the Harford County Code does not grant the right of a direct and independent appeal. *See Griffin v. Lindsey*, 444 Md. 278, 291, 119 A.3d 753, 761 (2015) (noting that any interpretation of a statute must not "undermine our rule that we must narrowly construe statutes granting the right to appeal."). Similar to Nat. Res. § 5-1603(c)(2)(i), the Harford County Code establishes the general right to appeal an adverse administrative decision, but does not provide the right to selectively appeal an adverse decision that is part and parcel of an ongoing administrative review.[2]

This interpretation accords with the overall structure of the Harford County Code. We interpret a single statutory provision in context and in harmony with the entire statutory scheme. *Haile v. State*, 431 Md. 448, 470, 66 A.3d 600, 612–13 (2013) ("A longstanding

---

[2] Interpreting HCC § 268-28A to allow a direct appeal of a forest conservation plan would also violate the rule of finality. *See infra* part B.

principle of statutory construction provides that 'our interpretation of [a] statute and the legislature's intent must be examined by looking to the statutory scheme in its entirety rather than segmenting the statute and analyzing only its individual parts.'") (citation omitted). Part of this analysis includes recognition that specific statutory provisions trump general provisions. *Harvey v. Marshall*, 389 Md. 243, 270, 884 A.2d 1171, 1187 (2005); *Young v. Anne Arundel Cnty.*, 146 Md. App. 526, 576, 807 A.2d 651, 681 (2002) ("When two provisions, one general and the other specific, appear to cover the same subject but seem to conflict, the specific provision is controlling and prevails over the general enactment.").

In a near identical provision to Nat Res. § 5-1608(a), HCC § 267-37D provides: "The Department's review of a forest conservation plan *shall be concurrent* with the review of the subdivision plan[,] grading permit application, or building permit application associated with the project." (Emphasis added). The general language establishing the right to appeal pursuant to HCC § 268-28A is controlled by the specific language of HCC § 267-37D that restricts *when* a party may appeal a forest conservation plan. *See Gisriel v. Ocean City Bd. of Supervisors Elections*, 345 Md. 477, 489, 693 A.2d 757, 763 (1997), *cert. denied*, 522 U.S. 1053, 118 S. Ct. 702 (1998) (holding that an appeal was not authorized under the general right to appeal provided in Md. Code Ann., Courts and Judicial Proceedings ("Cts. & Jud. Proc.") § 12-301, because a more specific provision, Cts. & Jud. Proc. § 12-302(a), applied). Like the Forest Conservation Act, the Harford County Code does not contemplate a review of a forest conservation plan that is independent from other parts of a development plan.

8

The Harford County Charter further indicates that a forest conservation plan would not be directly and independently appealable. Art. VII § 709 of the Harford County Charter provides: "Any person aggrieved by any *final* decision in a zoning case shall have the right to appeal that decision to the Circuit Court for Harford County and shall have the further right of appeal to the Court of Appeals of Maryland." (Emphasis added). The plain text of the charter limits the right of appeal to *final* decisions. Where provisions of Charter and the County Code conflict, the Charter, as the foundational document for the county, prevails. *Bd. of Supervisors of Elections of Anne Arundel Cnty. v. Smallwood*, 327 Md. 220, 237, 608 A.2d 1222, 1230 (1992) ("A charter . . . is the organic, the fundamental law, establishing basic principles governing relationships between the government and the people."). As explained below in part B, the charter does not permit the direct appeal of the approved forest conservation plan because the decision was not final as a matter of law.

**B. The approval of the forest conservation plan was not a final agency action.**

"It is a general principle of Maryland Administrative law that an action for judicial review of an administrative order will lie only if the *administrative order is final*." *Bd. of License Comm'r for Anne Arundel Cnty. v. Corridor Wine, Inc.*, 361 Md. 403, 418, 761 A.2d 916, 924 (2000) (internal quotation marks omitted and emphasis added). "[N]ot every administrative order which determines rights and liabilities, or from which legal consequences flow, is final and thus subject to judicial review." *Holiday Spas v. Montgomery Cnty. Human Relations Comm'n*, 315 Md. 390, 396, 554 A.2d 1197, 1200 (1989). "To be 'final' the order or decision must dispose of the case by deciding all

9

question of law and fact and leave nothing further for the administrative body to decide."

*Willis v. Montgomery Cnty.*, 415 Md. 523, 535, 3 A.3d 448, 455–56 (2010).

The rule of finality advances the judicial policies of efficient litigation and unfragmented opinions. *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 298, 112 A.3d 429, 435 (2015); *Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC,* 443 Md. 199, 216, 115 A.3d 634, 644 (2015). In *Driggs Corp. v. Maryland Aviation Admin.*, we explained:

> The salutary purpose of the finality requirement is to avoid piecemeal actions in the circuit court seeking fragmented advisory opinions with respect to partial or intermediate agency decisions. Not only would a contrary rule create the real prospect of unnecessary litigation, as a party choosing to seek review of an unfavorable interlocutory order might well, if the party waited to the end, be satisfied with the final administrative decision, but the wholesale exercise of judicial authority over intermediate and partial decisions could raise serious separation of powers concerns.

348 Md. 389, 407, 704 A.2d 433, 443 (1998).

"We have consistently applied the rule of finality to land use decisions of local governments." *Town of Upper Marlboro v. The Prince George's Cnty. Council*, 480 Md. 167, 280 A.3d 212 (2022) (citing *Renaissance Centro Columbia, LLC v. Broida*, 421 Md. 474, 485, 27 A.3d 143, 149 (2011); *K. Hovnanian*, 443 Md. at 215, 115 A.3d at 643–44; *Smith v. Cnty. Comm'rs of Kent Cnty.*, 418 Md. 692, 712, 18 A.3d 16, 28 (2011); *Dorsey v. Bethel A.M.E. Church*, 375 Md. 59, 75, 825 A.2d 388, 396 (2003); *Prince George's Cnty. v. Blumberg*, 288 Md. 275, 295, 418 A.2d 1155, 1166 (1980); *American Wild Horse Campaign v. Bernhardt*, 442 F. Supp. 3d 127, 150 (D.D.C. 2020) (observing that the rule of finality generally applies to land use plans)).

10

The approval of the forest conservation plan was not a final agency action because the Harford County Department of Planning and Zoning ("the agency") still needed to approve the preliminary plan and the site plan. Both parties agree that a party may not initiate development of a property until after *the entire* development plan is approved. The forest conservation plan is a *constituent* element of the entire development plan. HCC § 267-37D ("The Department's review of a forest conservation plan *shall be concurrent* with the review of the subdivision plan, grading permit application[,] or building permit application associated with the project.") (emphasis added). Therefore, a party should not be able to appeal a forest development plan unless and until the other necessary elements of the entire development plan have been adjudicated.

In the case at bar, the Director of Planning approved the forest conservation plan, but CREG Westport I, LLC, *et al.* ("Respondent") could not have initiated development until both the preliminary plan and site plan were also approved. The pending approval of the preliminary plan and site plan demonstrates that there was more for the agency to do following the approval of the forest conservation plan before the administrative review was complete. *Willis*, 415 Md. at 535, 3 A.3d at 455–56.[3] The forest conservation plan was not a final decision because it left additional, necessary determinations by the Director of Planning before development could begin.

---

[3] Three preliminary plans were approved in the months following the approval of the forest conservation plan, and prior to the Department's hearing on their appeal of the forest conservation plan. *See Chesapeake Bay Found., Inc. v. CREG Westport I, LLC*, 252 Md. App. 470, 474, 259 A.3d 219, 221 (2021). Petitioner therefore had the opportunity to appeal the approvals preliminary site plans, which were final agency actions, but declined to do so.

11

Petitioner argues that the approval of the forest conservation plan was final because it conclusively determined the status of forest conservation on the property—*i.e.*, there was nothing left for the Director of Planning to decide with respect to forest conservation. This Court has rejected the proposition that an administrative decision is final merely because it was made by a board, executive, or unit atop an administrative hierarchy. *Dorsey*, 375 Md. at 75, 825 A.2d at 397. The approval of the forest conservation plan may have been final as to the status of the trees on the property, but it did not constitute a final, reviewable agency action as a matter of law, because it did not decide all of the rights, responsibilities, and legal consequences that could have flowed from an agency adjudication for the entire property. *Holiday Spas*, 315 Md. at 396, 554 A.2d at 1200. The forest conservation plan was one of *several necessary pieces* towards approval of the entire site plan. Allowing direct appeal of the approval of a forest conservation plan is exactly the type of piecemeal action prohibited by the rule of finality *Driggs*, 348 Md. at 407, 704 A.2d at 442.

Petitioner incorrectly argues that it would create unequal appeal rights to determine that a denial of a forest conservation plan would be a judicially reviewable final agency action, but approval of a forest conservation plan is not. The approval of a forest conservation plan is necessary, but not sufficient for the approval of the whole site plan or preliminary site plan. If the whole site plan or preliminary site plan is approved, Petitioner would have an opportunity to appeal the approval of the forest conservation plan by appealing the approval of the site plan or preliminary site plan. If those comprehensive plans are not approved, the forest conservation plan cannot be acted upon, and an appeal by Petitioner becomes unnecessary.

12

In contrast, because a forest conservation plan is necessary for the approval of the whole site plan or preliminary site plan, if the forest conservation plan is denied, the administrative process is over and there is nothing more for the agency to decide with regards to development of the site. No further action can be taken until the developer receives an approved forest conservation plan, and there is no later opportunity for the developer to appeal the merits of that decision. Unlike an *approval* of a forest conservation plan, the *denial* of a forest conservation plan is a final agency action subject to judicial review.

This approach is consistent with how forest conservation plans are treated in other Maryland counties. In Prince George's County, applications for certain development plans are required to include one of two types of "tree conservation plans." Prince George's County, Md., Code ("PGCC") § 25-119(a)(1) & (2) ("[T]his Woodland and Wildlife Habitat Conservation Division applies to . . . [a]ll applications pursuant Subtitles 4 (Building Code), 24 (Subdivision Ordinance and 27 (Zoning Ordinance) of the County Code[.]"). PGCC § 25-120(b)(2) provides that appeals of "[d]ecisions of the Planning Board or the District Council related to this Division[,]" namely the division governing, among other things, tree conservation plans, "may be made by following the appeal provisions *applicable to the associated plan.*" (Emphasis added). In the most recent Forest Conservation Annual Report, the Prince George's County Planning Department explained that tree conservation plans "*are conceptual in nature* and are prepared and approved *in conjunction with* Conceptual Site Plans, Preliminary Plans of Subdivision, and

13

Comprehensive Plans."[4]  Prince George's County Planning Department, FY 2020 Forest Conservation Annual Report 3 (Mar. 29, 2021), https://www.mncppc.org/DocumentCenter/View/15337/FY-2020-Forest-Conservation-Annual-Report?bidId=, archived at https://perma.cc/6CMS-XLTK (emphasis added). Like in Harford County, review of a forest conservation plan in Prince George's County is reviewed as one constituent part of the larger development plan.

Other Maryland counties have seen challenges to the approval of a forest conservation plan as part of an appeal of the *entire* site plan.  *See, e.g.*, *W. Montgomery Cnty. Citizens Ass'n v. Montgomery Cnty. Plan. Bd. of Maryland-Nat'l Capital Park & Planning Comm'n*, 248 Md. App. 314, 347, 241 A.3d 76, 95 (2020), *cert. denied sub nom. W. Montgomery Cnty. Citizens Ass'n v. Montgomery Cnty. Planning Bd.*, 474 Md. 198, 253 A.3d 625 (2021) (determining that there was substantial evidence in the record for a tree variance to be granted under an applicant's approved forest conservation plan in a case in which petitioner filed for judicial review of the county board's approval of a preliminary site plan).  Granting judicial review of an approved forest conservation plan contravenes the rule of finality in Maryland.

---

[4] PGCC § 25-119(a)(2)(B) also provides for a more technical tree conservation plan (*i.e.*, "TCP2") for applications for a "Special Exception, Detailed Site Plan, Specific Design Plan, grading permit or similarly detailed plan[.] . . ."  Even with this specialized form of tree conservation, PGCC § 25-119(a)(2)(B) states that "[i]f a site requires approval of a TCPS with an associated and development application, *the TCP2 shall not be reviewed independently of the associated plan*."  (Emphasis added).

## C. Conclusion

State and local law provide a general right to appeal the approval of a forest conservation plan, but none of the statutory provisions cited by Petitioner expressly authorize a direct and independent appeal of an approved forest conservation plan. A direct and independent appeal of the forest conservation plan also violates the rule of finality because it would initiate judicial review of one aspect of a development plan that would be rendered moot if other necessary aspects of the development plan were denied approval. For these reasons, I dissent and would affirm the judgment of the Court of Special Appeals.

Judge Getty has authorized me to state that he joins in this opinion.